MOORE, Judge.
Lynn E. Thomas d/b/a Anchor Comms (“Thomas”) appeals from a judgment of the Jefferson Circuit Court (“the trial *810 court”) in favor of American Express Bank, FSB (“American Express”). We reverse.

Background

American Express sued Thomas on October 6, 2011, asserting three counts of breach of a written contract; each count related to a separate credit account Thomas had held with American Express. American Express claimed that Thomas owed American Express a total of $25,778.86 on the three accounts, including unpaid principal, accrued interest, and attorney fees. Thomas, acting pro se, denied that he owed American Express any money.
On April 11, 2012, American Express moved for a summary judgment as to all three counts. Thomas, who by that time was represented by legal counsel, requested additional time to conduct discovery; the trial court granted Thomas’s motion. On August 10, 2012, after the parties had completed discovery, American Express supplemented its previously filed summary-judgment motion. Thomas opposed American Express’s summary-judgment motion and sought a summary judgment in his favor.
On August 27, 2012, the trial court entered a summary judgment in favor of American Express on its breach-of-contract claims; the trial court awarded American Express the amount it had requested in its complaint, i.e., $25,778.86. The trial court also expressly denied Thomas’s summary-judgment motion. Thomas timely filed a postjudgment motion, pursuant to Rule 59, Ala. R. Civ. P., which the trial court denied on September 23, 2012. Thomas timely filed his notice of appeal.

Analysis

In support of its summary-judgment motion, American Express relied on the affidavit of Walter Gibbs, who attested that he was the assistant custodian of records for American Express and that he had personal knowledge of Thomas’s accounts by virtue of his employment with American Express. Gibbs attested that Thomas’s accounts were past due in the principal amount of $19,753.76, that interest of $2,662.65 had accrued on the unpaid principal, and that Thomas owed attorney fees in the amount of $3,362.45. American Express also submitted the following documents in support of its summary-judgment motion: a copy of a monthly account statement dated June 8, 2009, for a “Blue Cash for Business Credit Card” bearing Thomas’s name and reflecting an outstanding balance of $1,174.34; a form copy of a “Blue Cash for Business Credit Card Agreement”; a copy of a monthly account statement dated June 11, 2009, for a “Platinum Delta SkyMiles Card” bearing Thomas’s name and reflecting an outstanding balance of $3,741.10; a form copy of an “Agreement Between Delta SkyMiles Credit Cardmember and American Express Bank, FSB”; a copy of a monthly account statement dated June 9, 2009, for a “American Express OPEN Line of Credit” bearing Thomas’s name and reflecting an outstanding balance of $14,838.32; and a form copy of a “Line of Credit for Business Agreement.” (We refer to the three form agreements collectively as “the card-member agreements.”)
Thomas responded by submitting his own affidavit attesting that he had requested a copy of any executed contract he was alleged to have breached but that American Express had failed to produce anything in response to that request; Thomas also attested that he had never signed a written contract with American Express. Thomas also attested that he had last used or made a payment on the Blue Cash for Business Credit Card in May 2007, that he had last used or made a payment on the American Express OPEN Line of Credit in July 2007, and that he *811 had last-used or made a payment on the Platinum Delta SkyMiles Card in July 2007. Thomas characterized his accounts with American Express as “open accounts” and asserted that any attempts to collect on those accounts were time-barred, pursuant to the three-year statute of limitations found in Ala.Code 1975, § 6-2-37.
American Express admitted that it had no signed applications that Thomas may have submitted for the accounts at issue,[1] American Express asserted, however, that, during discovery, Thomas had admitted requesting that the accounts be opened and that he had used the accounts. American Express further asserted that use of the accounts was governed by the card-member agreements it had submitted to the trial court, the terms of which allow American Express to recover attorney fees in the event legal action is required to collect unpaid balances. Thus, American Express asserted, by virtue of his use of the credit accounts, Thomas was liable for the unpaid principal balances, accrued interest, and attorney fees. In its responses to Thomas’s interrogatories, however, American Express admitted that Thomas’s “indebtedness on each of the three individual accounts is not based on an express agreement” and that it did “not contend that a written contract was entered into by the parties.”[2] Based on the above evidence, the trial court entered a summary judgment in favor of American Express.

Standard of Review

“ ‘ “We review the trial court’s grant or denial of a summary judgment motion de novo.” Smith v. State Farm Mut. Auto. Ins. Co., 952 So.2d 342, 346 (Ala.2006) (citing Bockman v. WCH, L.L.C., 943 So.2d 789 (Ala.2006)). A summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Rule 56(c)(3), Ala. R. Civ. P. If the movant meets this initial burden, the burden then shifts to the nonmovant to present “substantial evidence” of a genuine issue of material fact. Ex parte Alfa Mut. Gen. Ins. Co., 742 So.2d 182, 184 (Ala.1999). Substantial evidence is “evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.” West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989); see also § 12-21-12(d), Ala.Code 1975. In determining whether a genuine issue of material fact exists, this Court views the evidence in the light most favorable to the nonmov-ant and resolves all reasonable doubts in favor of the nonmovant. Jones v. BP Oil Co., 632 So.2d 435, 436 (Ala.1993).’ ”
Harris v. Health Care Auth. of Huntsville, 6 So.3d 468, 472 (Ala.2008) (quoting McCutchen Co. v. Media Gen., Inc., 988 So.2d 998, 1001 (Ala.2008)).

Analysis

On appeal, Thomas asserts that the trial court erred in entering a summary judgment in favor of American Express on its breach-of-contract claims. He asserts, and American Express apparently admits, that Thomas never signed a written contract or agreement with American Express and that no executed contracts exist to govern *812 the dealings between the parties. Thomas also asserts that American Express has failed to establish that he ever specifically agreed to the terms and conditions of the cardmember agreements that were presented to the trial court. Thomas asserts that, without evidence that the parties mutually agreed to all of the necessary elements of a contract, American Express was not entitled to a judgment as a matter of law on its only theory of recovery, i.e., breach of contract.
American Express asserts that it sufficiently supported its summary-judgment motion. It asserts that its evidence establishes that a credit card was issued to Thomas on each of the three accounts and that Thomas admittedly used those credit accounts. American Express also asserts that Thomas cannot feign ignorance as to the existence of the contract terms binding the parties to those accounts because the monthly billing statements sent to Thomas contained the following language: “Certain of the periodic rates and APRs above may be variable. These rates may vary based upon the prime rate identified in the Wall Street Journal, as described in your Card-member Agreement as currently in effect.” [3] Based on that language, American Express asserts in its appellee’s brief filed with this court that
“[ijgnorance of the terms of this agreement on the part of Thomas is either willful or a result of inattentiveness.
“Further, the Cardmember Agreements each contain language showing the form of acceptance of the agreements. The first paragraph of each of the three Cardmember Agreements contains a provision that use of the card issued by American Express constitutes an acceptance of the terms of the agreement. Thomas does not dispute receiving the cards in question. Thomas also does not dispute using the cards. Accordingly, Thomas does not dispute accepting the Agreement in regards to the credit cards in question.”
Despite Thomas’s admitted use of the three accounts at issue, we cannot agree with American Express that the language found in the June 2009 statements and quoted above was sufficient to serve as notice to Thomas of the terms of the card-member agreements to which he was purportedly bound. Undoubtedly, the language was sufficient to notify any recipient of those statements that a cardmember agreement existed, but, by the time those three statement were prepared, i.e., June 2009, Thomas had already been in default on the three accounts at issue for approximately two years. American Express submitted nothing to the trial court to establish that, at any point before June 2009, Thomas had received the cardmember agreements or that he had agreed to be bound by the terms of the cardmember agreements.
Additionally, using circular logic, American Express relies on language found in the cardmember agreements themselves to establish that Thomas had agreed to be bound to the terms of those agreements. Thomas, however, denies ever receiving the cardmember agreements; therefore, language found in those cardmember agreements cannot be used to establish Thomas’s acceptance of their terms. American Express has not otherwise established Thomas’s assent to be bound to the terms of those agreements.
To establish its breaeh-of-con-tract claims, American Express was required to show (1) a valid contract binding *813 the parties; (2) its performance under the contract; (3) Thomas’s nonperformance; and (4) resulting damages. Reynolds Metals Co. v. Hill, 825 So.2d 100, 105 (Ala.2002). Additionally, the elements of a valid contract include: “ ‘an offer and an acceptance, consideration, and mutual assent to terms essential to the formation of a contract.’” Ex parte Grant, 711 So.2d 464, 465 (Ala.1997) (quoting Strength v. Alabama Dep’t of Fin., Div. of Risk Mgmt., 622 So.2d 1283, 1289 (Ala.1993)).
Because it has not established the terms to which both parties agreed regarding the three accounts, American Express has not established that it is entitled to a judgment as a matter of law on the only theory of recovery asserted by American Express, i.e., three counts of breach of a written contract.[4] We, therefore, reverse the judgment of the trial court and remand for further proceedings.
REVERSED AND REMANDED.
PITTMAN and DONALDSON, JJ., concur.
THOMAS, J., concurs in the result, without writing.
THOMPSON, P.J., concurs in the result only, with writing.

. American Express asserted that, pursuant to 12 C.F.R. § 202.12, it was required to maintain copies of credit-card applications for only 25 months.

. American Express does not explain on what basis it is entitled to an award of attorney fees in the absence of an express provision allowing for such an award. Additionally, American Express’s admission that no written contract exists directly contravenes the allegations in its complaint.

. Thomas admitted that he had received some of the monthly statements pertaining to the accounts but he denies receiving all of them.

. We recognize that a signature is not always required to demonstrate assent to a contract; however, there must be some sort of showing of mutual assent to the terms governing the parties’ agreement. American Express has not yet met that burden in this case.